**MOSKOWITZ COLSON**
**GINSBERG SCHULMAN**

Moskowitz Colson
 Ginsberg & Schulman LLP
80 Broad Street, Suite 1900
New York, NY 10004
(212) 257-6455
www.mcgsllp.com

December 3, 2025

By ECF
Honorable Eric R. Komitee
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re:  *United States v. Asif Merchant,* 24 CR 362 (EK)

Dear Judge Komitee:

  We represent Defendant Asif Merchant in the above-referenced matter. We write pursuant to the Court's November 12, 2025, Order, directing counsel to confer with the government regarding their discovery concerns and to advise the Court within twenty-one days whether Court intervention is necessary. On Tuesday, November 25, 2025, the parties met and conferred by telephone. The parties were unable, however, to resolve a dispute over the scope of the government's production of Mr. Merchant's communications that were intercepted through electronic surveillance. As discussed more fully below, both Fed. R. Crim. 16 and *Brady v. Maryland* require production of all of Mr. Merchant's intercepted communications, rather than the limited recordings selected and produced by the government. Defendant also objects to the redactions made to a number of documents in the government's October 21, 2025, production. As a result, Defendant believes Court intervention is necessary.

  I.  Background

  Asif Merchant ("Asif") is charged with Attempt to Commit an Act of Terrorism Transcending National Boundaries and Murder for Hire. He is a Pakistani national who was allegedly recruited by the Iranian government to travel to the United States and recruit one or more "hit men" to assassinate high-ranking American officials. Discovery has revealed that Asif was under investigation before he arrived in the United States, and he was under surveillance from the moment he arrived in this country. In addition, Asif was the subject of electronic surveillance under the Foreign Intelligence Surveillance Act ("FISA"). (*See* Notice of Intent to Use Foreign Intelligence Surveillance Act, Docket Entry No. 20). As a result, the government is in possession of his communications which it obtained through this electronic surveillance. In addition, Asif was also under surveillance by teams of agents. The government produced reports from these surveillance teams, which indicate that Asif was constantly speaking on his phone. The government also set-up a hidden camera in a hotel room where he stayed for a number of days,

which also indicates that Asif made a number of calls on his cellphone (though the calls can be difficult to hear). Both the surveillance reports and the hidden camera cover only a portion of the time between Asif's entry into the United States and his arrest.

On November 8, 2024, the government produced five recordings of Asif's intercepted telephone calls. On October 28, 2025,[1] Defendant received sixty-four additional audio-recordings of Asif's telephone calls from the government. These sixty-nine recordings, however, do not match up with the phone calls noted in the surveillance reports. Moreover, given the frequency with which Asif used his phone while under surveillance and while his phone was subject to monitoring (as can be observed on the surveillance videos produced by the government, for example), the government is likely in possession of many additional recordings that have not been produced. In addition to the sixty-four recordings, the October 21, 2025, production included a number of FBI reports that were redacted. All of the reports appear to memorialize interviews in connection with the government's investigation into Asif's activities prior to his arrest. The basis for the redactions is neither apparent from the context of the document, nor do they appear to apply a consistent standard for withholding information. For example, a report memorializing an FBI interview with Asif's sister is redacted despite the fact that the interview appears to concern Asif. Similarly, in some reports the identity of an interviewee will be unredacted, but the name of the person that interviewee learned the information from is redacted.

During the November 25, 2025, meet and confer, the Defense (1) expressed concerns about the timing of the October 28, 2025, production and asked why the government had not produced the recordings at an earlier date, since they appear to have been in the government's possession throughout the pendency of this case; (2) asked whether the government would offer any recordings at trial; and (3) requested that the government produce a complete set of communications intercepted from Asif. In response, the government (1) agreed to allow any defense counsel who holds a security clearance to review a redacted version of the Government's November 12, 2025, *ex parte* letter to the Court; and (2) represented that the government does not presently intend to offer any of the recorded telephone calls in its case in chief. As to the request for production of a complete set of Asif's recorded statements, the government has refused to produce any additional intercepted conversations involving the defendant and has refused to explain the basis for withholding such conversations, stating instead that the "the government has complied with its discovery obligations." The Defense also raised the issue of the government's redactions. The government maintained that it made the redactions based on "relevance," but asked defense counsel to cite to specific documents for which there was a question. On December 2, 2025, the Defense provided four sets of documents where there were issues with the redactions. The government is currently reviewing those documents.

II.     Legal Argument

      a. The Government Does Not Intend to Offer the Recordings it Produced

The government represented that it does not intend to offer any recordings from the intercepted communications in its case in chief. Based upon this representation, Defendant does

---

[1] The government's cover-letter is dated October 21, 2025. (*See* Docket Entry No.60).

not believe a motion to suppress is necessary at this time. Defendant respectfully reserves his right to seek suppression of intercepted conversations if the government changes its position and seeks to offer intercepted conversations at any point during the trial.

### b. The Government Must Produce All Electronic Surveillance

As noted above, the parties could not reach an agreement concerning the production of Asif's intercepted communications. During the meet and confer, the defense asked the government to produce all recordings of Asif's telephone calls in the government's possession based upon Fed. R. Crim. P. 16 and *Brady*. The government responded that it had fulfilled its obligation under Rule 16 and is aware of its *Brady* obligations.

Contrary to the government's view, it is required to produce all of Asif's intercepted communications under Rule 16. First, the communications must be produced under Rule 16(a)(1)(B)(i) as the recorded statements of the Defendant. Under that provision, the government must produce "any relevant written or recorded statement by the defendant if: the statement is within the government's possession, custody, or control; and the attorney for the government knows—or through due diligence could know—that the statement exists." Fed. R. Crim. P. 16(a)(1)(B)(i). Second, the intercepted communications are material to preparing a defense. Under Rule 16(a)(1)(E)(i), "[t]he Government must 'permit the defendant to inspect' any item that is 'material to preparing the defense.'" *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020). "The 'materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.'" *United States v. Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007) (citation omitted). "'Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense.'" *Id.* at 357 (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)); *Clarke*, *supra*.

Here, the recorded statements must be produced under both Rule 16(a)(1)(B)(i) and (a)(1)(E)(i). First, there is no dispute that the recordings are in the government's possession, custody, or control, nor can the government dispute that its attorneys know the recordings exist. Moreover, the government produced numerous surveillance reports and footage from a secret camera hidden in Asif's hotel room. Both the surveillance reports and the camera recording indicate that he used his cellphone constantly. The recordings produced by the government, however, do not match the communications which occurred during the surveillance. In other words, many more recordings of Asif should exist that correspond to telephone calls noted in the reports or indicated by the footage. Second, the additional recordings are material. Asif is accused of coordinating anti-American activity and assassinations on behalf of a foreign government over the course of the approximately three months he was in the United States. The content of the recordings is relevant to show his actual activity during that time period, and the government's refusal to produce the recordings implies that these communications do not constitute evidence of the alleged plot. On the other hand, the additional recordings would show him engaging in activity and discussing matters unrelated to the allegations in this case. The intercepted conversations may also help disprove the Government's interpretation of consensually recorded conversations that it intends to offer into evidence.

The recordings are also relevant to rebutting the government's evidence. During the meet and confer, the defense asked the government whether it intended to offer evidence concerning the surveillance of Asif. The government responded that it intends to do so. The purpose of such evidence, that is, the frequent observations of Asif communicating on his cellphone, would be to suggest that he was observed in the act of planning or discussing the activity for which he is charged. To rebut that characterization or implication, the recordings are necessary to show what Asif actually discussed in those communications. Therefore, the recordings are material because they can be used to counter the government's case and to bolster Asif's defense.

The intercepted communications also constitute *Brady* material for similar reasons. "Under *Brady v. Maryland*, the government 'has a constitutional duty to disclose favorable evidence to the accused where such evidence is "material" either to guilt or to punishment.' 'Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness.'" *United States v. Gatto*, 316 F. Supp. 3d 654, 657 (S.D.N.Y. 2018). Here, the recordings of Asif's communications are favorable evidence. First, the contents would show him engaging in conduct unrelated to the criminal activity at the same time he is alleged to have been committing acts to further the plot alleged in this case. The recordings would also tend to exculpate him by showing more broadly that he was not engaging in the degree of planning alleged by the government, and that in reality, his activities were focused on a different purpose. Second, the content of the recordings may provide impeachment material against the government's witnesses. For example, the recordings can be used to cross-examine witnesses who conducted surveillance and may suggest that Asif was observed using his phone to communicate about the alleged plot or acting in a way to avoid surveillance. The recorded conversation may also provide information that would contradict the government's interpretation of the consensually recorded conversations that it intends to offer into evidence. Given that trial is approximately ten weeks away, and the large volume of recordings at issue that may need to be translated, the government should be required to produce the communications forthwith to allow the defense to have them translated so that they can be used at trial.

  c. Redactions

The government redacted a number of reports it produced on October 21, 2025. The government advised the Defense that it made the redactions based on relevance. There are several problems, however, with this proffered basis. First, the government is not permitted to decide what discovery is or is not relevant to Asif's defense of this case. The standard is not whether the information or documents satisfy subjective prosecutorial criteria for relevance. Rather, as discussed above the standard is whether the discovery is material, and that is a low burden for a Defendant to satisfy. *United States v. Wilson*, 518 F. Supp. 3d 678, 686 (W.D.N.Y. 2021) (quoting *Clarke*, *Stevens*, and *Stein*, *supra*). The redactions appear to conceal information obtained by the government through interviews with various subjects about Asif's activities prior to his arrest. Because those activities are at issue, such discovery is material because it may contradict the government's case or bolster a defense. Like the additional recordings, the redacted material may help disprove the government's allegations and interpretation of Asif's activities prior to his arrest.

      Second, whatever standard used by the government for the redactions appears to have been applied inconsistently. In some documents, the names of interview subjects or other people mentioned are either partially or fully redacted. In others, the names may not be redacted at all. In one report, the whole document is redacted except for one sentence that only identifies the first name of a person, but that person has a common name. In another report, the interview subject's name is provided, but the name of the source of the person's supposed knowledge is redacted. Third, because of these inconsistent redactions, it is impossible for the defense to make effective use of the information contained in the reports. Many of these reports contain rumors or other information about Asif's past and his activities that the interview subject claims they learned from another person. Without the identity of the person asserting some fact about Asif, the Defense cannot effectively investigate the allegations being made. For these reasons, the government should be ordered to produce unredacted versions of the reports.

    III.    Conclusion

      For the reasons discussed above, Defendant respectfully submits that the Court should order the government to produce all of Defendant's intercepted communications and unredacted versions of the FBI reports.

      Thank you in advance for your consideration of this motion.

                                          Respectfully submitted,

                                                    /s/

                                        Avraham C. Moskowitz
                                        Joshua J. Lax
                                        Christopher Neff
                                        *Attorneys for Asif Merchant*

cc:  ALL COUNSEL (BY ECF)