NJM:SKW/GMR/NCG
F. #2023R00922

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                        24-CR-362 (EK)

ASIF MERCHANT,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X


<u>GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR AN ANONYMOUS JURY</u>


                                  JOSEPH NOCELLA, JR.
                                  United States Attorney
                                  Eastern District of New York


Sara K. Winik
Gilbert M. Rein
Nina C. Gupta
Assistant United States Attorneys
     (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

RELEVANT BACKGROUND .............................................................................. 2

I.    FACTUAL BACKGROUND ........................................................................ 2

II.   THE COURT SHOULD ORDER AN ANONYMOUS JURY ........................................ 3

    A. Legal Framework ............................................................................... 3

    B. The Seriousness of the Charges, the Risk to the Judicial Process and the Expectation
       of Publicity All Favor Empaneling an Anonymous Jury ........................................... 6

       1. The Charges in This Case Are Serious ............................................... 6

       2. The Judicial Process is at Risk ....................................................... 8

    C. Publicity Surrounding the Case ................................................................. 9

III.  AN ANONYMOUS JURY WILL NOT PREJUDICE THE DEFENDANT ................... 11

IV.   CONCLUSION ..................................................................................... 13

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Hartford Courant Co. v. Pellegrino,*
    380 F.3d 83 (2d Cir. 2004)................................................................................. 1

*Lugosch v. Pyramid Co. of Onondaga,*
    435 F.3d 110 (2d Cir. 2006) ............................................................................ 1

*Rosales-Lopez v. United States,*
    451 U.S. 182 (1981)........................................................................................ 12

*United States v. Ahmed,*
    No. 12-CR-661 (SLT) 2014 WL 6983438 (E.D.N.Y. Dec. 10, 2014) ..................... 6

*United States v. Al Fawwaz,*
    57 F. Supp. 3d 307 (S.D.N.Y. 2014).............................................................. 4, 6

*United States v. Alcantara,*
    396 F.3d 189 (2d Cir. 2005)............................................................................. 1

*United States v. Amodeo,*
    71 F.3d 1044 (2d Cir. 1995)............................................................................. 1

*United States v. Arillotta,*
    529 F. App'x 81 (2d Cir. 2013) ........................................................................ 3

*United States v. Asainov,*
    No. 19-CR-402 (NGG) ................................................................................... 5

*United States v. Augustine,*
    No. 18-CR-393 (SJ) (E.D.N.Y. April 14, 2021) .............................................. 5

*United States v. Aulicino,*
    44 F.3d 1102 (2d Cir. 1995)................................................................... 4, 8, 11

*United States v. Barnes,*
    604 F.2d 121 (2d Cir. 1979).................................................................. 5, 10, 12

*United States v. Bellomo,*
    263 F. Supp. 2d 557 (E.D.N.Y. 2003) .......................................................... 10

*United States v. Doe,*
    63 F.3d 121 (2d Cir. 1995)............................................................................... 1

*United States v. Farekh,*
  No. 15-CR-268 (BMC) (E.D.N.Y. June 16, 2017) ................................................... 6

*United States v. Goran Gogic*,
  No. 22-CR-493 (JMA) (E.D.N.Y Dec. 11, 2025) ................................................... 6

*United States v. Gotti*,
  459 F.3d 296 (2d Cir. 2006) ................................................................... 3, 11

*United States v. Hausa,*
  No. 12-CR-661 (BMC) (E.D.N.Y. June 20, 2016) ................................................... 6

*United States v. Herron,*
  2 F. Supp. 3d 391 (E.D.N.Y. 2014) .............................................................. 10

*United States v. Ibrahim*,
  529 F. App'x 59 (2d Cir. 2013) ................................................................ 3, 6

*United States v. Kadir*,
  718 F.3d 115 (2d Cir. 2013) ............................................................. 3, 4, 6, 11

*United States v. Kandic*,
  No. 17-CR-449 (NGG), 2021 WL 5505832 (E.D.N.Y. Nov. 24, 2021) ............................... 5, 8

*United States v. Kaziu,*
  559 F. App'x 32 (2d Cir. 2014) .............................................................. 3, 5, 11

*United States v. Khan*,
  591 F. Supp. 2d 166 (E.D.N.Y. 2008) ........................................................... 4

*United States v. Krasniqi et al.*,
  25-CR-385 (JMA) (E.D.N.Y. Dec. 11, 2025 ) .................................................. 6, 10, 11

*United States v. Naseer,*
  No. 10-CR-19 (RJD) (E.D.N.Y. Dec. 30, 2014) ................................................... 6

*United States v. Paccione*,
  949 F.2d 1183 (2d Cir. 1991) ................................................................. 10, 11

*United States v. Persico*,
  832 F.2d 705 (2d Cir. 1987) ................................................................... 10

*United States v. Pica*,
  692 F.3d 79 (2d Cir. 2012) ..................................................................... 3

*United States v. Pugh,*
  150 F. Supp. 3d 218 (E.D.N.Y. 2015) ..................................................... passim

iii

*United States v. Quinones*,
   511 F.3d 289 (2d Cir. 2007)...................................................................... 4

*United States v. Stewart*,
   590 F.3d 93 (2d Cir. 2009)............................................................... 6, 7, 9

*United States v. Thai*,
   29 F.3d 785 (2d Cir. 1994)........................................................... 10, 11, 12

*United States v. Thomas*,
   757 F.2d 1359 (2d Cir. 1998)................................................................ 5, 8

*United States v. Tomero*,
   486 F. Supp. 2d 320 (S.D.N.Y. 2007)...................................................... 4

*United States v. Tutino*,
   883 F.2d 1125 (2d Cir. 1989)......................................................... 4, 10, 11

*United States v. Vario*,
   943 F.2d 236 (2d Cir. 1991)............................................................. 10, 12

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion for an anonymous trial jury in this case.  Because this case involves terrorism and murder-for-hire charges, and because the defendant admitted to the government ███████████ ████████████████████████████████████████████████ ██████████████████████████,[1] a fair trial requires empaneling an anonymous jury. Indeed, as detailed below, the factors warranting the use of anonymous juries in such cases— particularly the seriousness of the charges and the danger posed by the defendant ████████ make an anonymous jury essential in this case.

---

[1]     The government has filed limited portions of this memorandum related to the defendant's proffer sessions with the government under seal (the "Redacted Information").  While courts recognize a "qualified First Amendment right" to access judicial documents and proceedings and a presumptive right of access to judicial documents under the common law, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)), those rights may be overcome in certain circumstances, including where a court makes "specific, on the record findings" "demonstrating that closure [or sealing] is essential to preserve higher values and is narrowly tailored to serve that interest."  *United States v. Alcantara*, 396 F.3d 189, 199 (2d Cir. 2005); *see also United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995).  In making that determination, courts apply a balancing test.  *United States v. Doe*, 63 F.3d 121, 128 (2d Cir. 1995).  Here, public disclosure of the Redacted Information implicates sufficiently "higher values" that warrant sealing, including the privacy interests of third parties, the safety of witnesses, and the government's interest in the integrity of ongoing investigations and the instant case.  The government therefore requests that the Court make specific findings, in accordance with *Doe*, that sealing the Redacted Information is both essential to preserve compelling interests and narrowly tailored to serve those interests. *Alcantara*, 396 F.3d at 199 (internal quotation marks omitted).  The government further requests that the Court's findings be made under seal.

1

## RELEVANT BACKGROUND

### I.    FACTUAL BACKGROUND

As discussed in detail in the government's omnibus motions *in limine*, the defendant Asif Merchant orchestrated a plot to assassinate U.S. government officials inside the United States.   In approximately April 2024, the defendant arrived in the United States and contacted a person he believed could assist him with the criminal scheme, but who in fact reported the defendant's conduct to law enforcement and became a confidential source (the "CS"). Subsequently, the defendant traveled from Texas to New York to meet with the CS.   Explaining his assassination plot, the defendant stated that it involved three different components: (1) stealing documents or USB drives from a target's home; (2) planning a protest; and (3) killing a politician or government official.   The defendant stated that the victims would be "targeted here," meaning in the United States.   He also stated that the "people who will be targeted are the ones who are hurting Pakistan and the world, [the] Muslim world.   These are not just normal people."

A few days later, the defendant met with the purported hitmen, who were in fact undercover U.S. law enforcement officers (the "UCs") whom the CS introduced to the defendant at the defendant's request.   The defendant advised the UCs that he was looking for three services from them, including killing a "political person."   During the meeting, the defendant presented himself as the "representative" in the United States, indicating that there were other people he worked for abroad.   He then paid the UCs a $5,000 advance payment for the plot.

After his arrest, the defendant met with the government and made several inculpatory admissions, including admitting ████████████████████████████

████████████████████████████    ████████████████

████████████████████████████

2

## II.    THE COURT SHOULD ORDER AN ANONYMOUS JURY

The government respectfully requests that the Court empanel an anonymous jury in the trial of this matter.  Specifically, the government requests that the names, addresses and workplaces of members of both the *venire* and the *petit* jury not be revealed to the parties.

### A.    Legal Framework

The Second Circuit has repeatedly upheld the use of anonymous juries where (1) there is strong reason to believe that the jury needs protection, and (2) reasonable precautions have been taken to minimize any adverse effect on the jurors' opinion of the defendants.  *See, e.g.*, *United States v. Kadir*, 718 F.3d 115, 121 (2d Cir. 2013); *United States v. Kaziu*, 559 F. App'x 32, 37-38 (2d Cir. 2014); *United States v. Arillotta*, 529 F. App'x 81, 82 (2d Cir. 2013); *United States v. Ibrahim*, 529 F. App'x 59, 65 (2d Cir. 2013).   "Within these parameters, the decision whether or not to utilize an anonymous jury is left to the district court's discretion."   *United States v. Pica*, 692 F.3d 79, 88 (2d Cir. 2012) (quoting *United States v. Gotti*, 459 F.3d 296, 345 (2d Cir. 2006)).

"In determining whether there is a 'strong reason' to believe that the jury needs protection, courts should consider several factors, including whether (1) the charges against the defendants are serious, (2) there is a substantial potential threat of corruption to the judicial process, and (3) considerable media coverage of the trial is anticipated." *United States v. Al Fawwaz*, 57 F. Supp. 3d 307, 309 (S.D.N.Y. 2014) (citing *United States v. Quinones*, 511 F.3d 289, 296 (2d Cir. 2007)), and *United States v. Tomero*, 486 F. Supp. 2d 320, 322 (S.D.N.Y. 2007)); *see also United States v. Pugh*, 150 F. Supp. 3d 218, 222 (E.D.N.Y. 2015) (same). "While 'it is unclear whether any of these factors individually justify impaneling an anonymous jury,' 'there are numerous cases indicating that anonymity is appropriate when some combination of these factors is present.'" *Pugh*, 150 F. Supp. 3d at 222 (quoting *United States v. Khan*, 591 F. Supp. 2d 166, 169 (E.D.N.Y. 2008) (citing *Quinones*, 511 F.3d at 296)).

Although empaneling an anonymous jury presents "the possibility of unfair prejudice to the defendant," *United States v. Tutino*, 883 F.2d 1125, 1132 (2d Cir. 1989), "the use of an anonymous jury does not infringe a defendant's constitutional rights, so long as the court conducts a *voir dire* designed to uncover any bias as to the issues or the defendant[] and takes care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities," *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995); *see also Kadir*, 718 F.3d at 120. "The Second Circuit has consistently 'made clear that when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights.'" *Pugh*, 150 F. Supp. 3d at 221(quoting *Kadir*, 718 F.3d at 120).

In *United States v. Barnes*, the Second Circuit upheld the empaneling of an anonymous jury and specifically rejected any claim that the law requires jurors to disclose their identities:

> If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgment be as free and impartial as the Constitution requires? If the anonymous juror feels less pressure as a result of anonymity . . . this is as it should be a factor contributing to his impartiality.

604 F.2d 121, 140-41 (2d Cir. 1979) (noting further that "in a case that generated as much pretrial publicity as [this one] and in which allegations of dangerous and unscrupulous conduct abounded, precaution was best taken so that fears would not become realities.").

Similarly, in *United States v. Thomas*, the Second Circuit explained that the protection of jurors is vital to the proper functioning of the federal criminal justice system, describing jury anonymity as a mechanism to ensure a fair and impartial verdict, free from fear or intimidation:

> As a practical matter, we cannot expect jurors to "take their chances" on what might happen to them as a result of a guilty verdict. Obviously, explicit threats to jurors or their families or even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict. Justice requires that when a serious threat to juror safety reasonably is found to exist, precautionary measures must be taken.

757 F.2d 1359, 1364 (2d Cir. 1998).

Courts in this District have routinely approved the use of anonymous juries in terrorism cases, including in a January 2023 trial in *United States v. Asainov*, 19-CR-402 (NGG), a May 2022 trial in *United States v. Kandic*, 17-CR-449 (NGG), 2021 WL 5505832 (E.D.N.Y. Nov. 24, 2021), and in an August 2021 trial in *United States v. Augustine*, No. 18-CR-393 (SJ), ECF No. 152 (E.D.N.Y. April 14, 2021) (granting government motion for anonymous jury).[2]

---

[2]    *See also, e.g.*, *Kaziu*, 559 F. App'x at 37-38 (upholding use of anonymous jury in prosecution for conspiracy to commit murder overseas and attempted provision of material support

Notably, recently in *United States v. Goran Gogic*, 22-CR-493 (JMA), a narcotics trafficking case, an anonymous jury pool was not used, and, following jury selection, a juror was approached and offered $100,000 to vote not guilty.  *See United States v. Krasniqi et al.*, 25-CR-385 (JMA) (E.D.N.Y. Dec. 11, 2025) (Indictment).

       As detailed below, the factors warranting the use of anonymous juries in terrorism cases make an anonymous jury necessary and appropriate in this case.

      B.      <u>The Seriousness of the Charges, the Risk to the Judicial Process and the Expectation of Publicity All Favor Empaneling an Anonymous Jury</u>

           1.      <u>The Charges in This Case Are Serious</u>

       The defendant faces gravely serious charges.  He stands accused of attempting to commit an act of terrorism transcending national boundaries and murder-for-hire with the goal of assassinating a government official in the United States.  Courts in this district have regularly approved anonymous juries in cases involving similarly serious charges.  *See supra* n.2.

---

to the terrorist organization al-Shabaab); *Ibrahim*, 529 F. App'x at 65 (affirming use of anonymous jury in case relating to plot to detonate fuel tanks at John F. Kennedy airport); *Kadir*, 718 F.3d at 121 (affirming use of anonymous jury in case relating to terrorist plot at John F. Kennedy airport); *United States v. al Farekh*, No. 15-CR-268 (BMC), ECF No. 102 (E.D.N.Y. June 16, 2017) (granting government's request for an anonymous jury in case involving an al-Qaeda member charged with conspiracy to murder U.S. nationals among other terrorism offenses); *United States v. Hausa*, No. 12-CR-134 (BMC), ECF No. 123 (E.D.N.Y. June 20, 2016) (granting government's request for an anonymous jury in case involving defendant charged with providing material support to al-Qaeda); *Pugh*, 150 F. Supp. 3d at 227-28 (granting government's motion for an anonymous, partially sequestered jury in trial of defendant accused of providing material support to the Islamic State); *United States v. Naseer*, No. 10-CR-19 (RJD), ECF No. 361 (E.D.N.Y. Dec. 30, 2014) (approving use of anonymous jury where defendant was charged with conspiring to provide material support to al-Qaeda); *United States v. Ahmed*, No. 12-CR-661 (SLT), ECF No. 143, 2014 WL 6983438 (E.D.N.Y. Dec. 10, 2014) (approving use of anonymous jury in terrorism trial); *see also United States v. Stewart*, 590 F.3d 93, 125 (2d Cir. 2009) (affirming use of anonymous jury in prosecution in the Southern District of New York of defense attorney and two co-conspirators for involvement with Sheikh Omar Abdel Rahman); *Al Fawwaz*, 57 F. Supp. 3d 307 (granting government's request for an anonymous jury in prosecution relating to plot to bomb the U.S. embassies in Kenya and Tanzania).

As the Court instructed in *Pugh*, the question is "not whether [the] [d]efendant himself poses a threat to the jury, but rather whether there is good reason to believe the jury needs protection."  *Pugh*, 150 F. Supp. 3d at 224 (citing *United States v. Stewart*, 590 F.3d 93, 123 (2d Cir. 2009)).

There is ample reason to believe the jury needs the protection of anonymity here. The defendant has admitted that he ███████████████████████████████████ ███████████████████████████        ███████████████████████████████ ███████████████████████████—in this case, provides a "strong reason" to believe that a jury in this case needs protection.  *Id.* at 221 (citation omitted).

███████████████████████████████████████ ▋ ████

████████████████████████████████████████████

█████████████████████████████████▌ ███████████████

██████████████████████████████████████████████▋

█████████████████████████████████████████████▌ ▋█████████

███████████████████████████████████████▋ ████████

---

[3] ████████ █▌███████████ ██████ ████████████ ████████████████████████████████████████████ █████████████████████████████

[4] *Id.*

[5] *Id.*

[6] █████████████████████████████████ ████████████████████████████ █████

[7] *Id.*

████████████████████████████████████████████████████

███████████████████████████████.

### 2.   The Judicial Process Is at Risk

An anonymous jury is also warranted in this case because of the risk of interference with the judicial process.   In assessing such risk, courts consider (1) the defendant's (or his associates') history of interfering with the judicial process and (2) whether there is reason to believe jurors "would reasonably fear retaliation for their involvement in the trial."   *Kandic*, 2021 WL 5505832 at *3; *see also Aulicino*, 44 F.3d at 1116; *Pugh*, 150 F. Supp. 3d at 225.   Both factors support an anonymous jury in this case.

Here, this is a risk that ████████ will interfere in the judicial process given the nature of the underlying crime: plotting to assassinate government officials and steal documents. Given the lengths to which the defendant ██████████ went to commit an act of terrorism in the United States and the current geopolitical climate, there is reason to believe ██████ would try to tamper with the jury pool.   The facts of this case, and prior decisions within this Circuit, also make clear that "there is a significant risk that jurors would fear reprisal without anonymity." *Pugh*, 150 F. Supp. 3d at 226.   Many jurors are aware of the political violence and assassination attempts throughout the world and could fear involving themselves in a case that involves those issues by serving as a juror.

Moreover, there is a legitimate concern that jurors in this trial will fear that an associate of the defendant will target them.   As the Second Circuit has stated, "even a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict."   *Thomas*, 757 F.2d at 1364.   Thus, it would not be unreasonable for jurors to believe that disclosure of their identities or information about their families or workplaces might expose them to unnecessarily

heightened risk.  *See Stewart*, 590 F.3d at 125 (noting "the reasonable likelihood that the pervasive issue of terrorism would raise in the jurors' minds a fear for their individual safety"); *Kasimov*, ECF No. 398, at 6-7 ("The relevant inquiry for this Court is whether there is good reason to believe the jury needs protection, not whether Defendant himself poses a threat to the jury." (internal marks and citation omitted)).  And public report has detailed measures taken by ▮▮▮ ▮▮▮ to retaliate against enemies of the Iranian government, even when they were located in the Eastern District of New York.[8]

C.    <u>Publicity Surrounding the Case</u>

An anonymous jury is also warranted because of the media attention this case has already generated and the publicity likely to result from trial.   Major media sources have reported regarding this case.[9]   Accordingly, the government expects that the pretrial proceedings and trial will attract media coverage.   Given the level of media attention and public scrutiny that this case has generated and will generate, it is reasonably foreseeable that the trial, including the jurors' identities, may be the subject of media coverage.   It is also conceivable that individuals

---

[8]    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[9]    *See, e.g.*, "Justice Dept. Charges Pakistani Man in Alleged Plot to Jill U.S. Leaders," New York Times, *available at* https://www.nytimes.com/2024/08/06/us/politics/justice-dept-assassination.html; "U.S. Charges Man with Ties to Iran With Plot to Assassinate Trump, Other Politicians, Wall Street Journal, *available at* https://www.wsj.com/us-news/u-s-charges-man-with-ties-to-iran-with-plot-to-assassinate-trump-other-politicians.

sympathetic to the defendant (or to his cause) or hostile to the government may seek to obtain information about the jurors.

The Second Circuit has repeatedly held that the expectation of publicity at trial weighs in favor of anonymity to avoid the jurors' exposure "to inappropriate contacts that could compromise the trial." *See United States v. Paccione*, 949 F.2d 1183, 1193 (2d Cir. 1991); *see also United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994); *United States v. Vario*, 943 F.2d 236, 240 (2d Cir. 1991); *Tutino*, 883 F.2d at 1132; *United States v. Persico*, 832 F.2d 705, 717 (2d Cir. 1987); *Barnes*, 604 F.2d at 141. Juror anonymity is an effective remedial measure to prevent possible prejudice and inappropriate contact by the press.

Moreover, potential jurors will be more willing to serve if they are confident that they and their families will not be subjected to scrutiny, harassment and possible threats. *See Barnes*, 604 F.2d at 141 (upholding anonymous jury and explaining that in a case with "much pretrial publicity" and "allegations of dangerous and unscrupulous conduct," "precaution was best taken so that fears would not become realities"). The media's interest in this case clearly "militate[s] in favor of an anonymous jury." *Vario*, 943 F.2d at 240.

Here, given the significant press coverage at the time of arrest and indictment and the highly unusual nature of the charges, the "court can reasonably anticipate that media attention is likely to be substantial during the trial itself." *Id.* at 227 (citing *United States v. Herron*, 2 F. Supp. 3d 391, 397–98 (E.D.N.Y. 2014) ("Although Defendant argues that the lack of recent media attention demonstrates that interest has abated ... the court finds that with the increased case activity associated with trial, it is reasonable to expect renewed media scrutiny.")); *see also United States v. Bellomo*, 263 F. Supp. 2d 557, 559 (E.D.N.Y. 2003) ("This case has already attracted pretrial publicity, but hardly as much as it will surely attract when the trial gets underway.").

III.    AN ANONYMOUS JURY WILL NOT PREJUDICE THE DEFENDANT

The defendant will not be prejudiced by the use of an anonymous jury.  As noted above, the use of an anonymous jury does not infringe on a defendant's rights provided that (1) "the jurors [are given] a plausible and nonprejudicial reason for not disclosing their identities"; and (2) "the court conducts a *voir dire* designed to uncover any bias as to the issues or the defendants."  *Aulicino*, 44 F.3d at 1116; *see also Kadir*, 718 F.3d at 120.

Here, the jurors may accurately be informed that these protective measures are being taken due to anticipated media interest, to prevent any arguable inference that the defendant poses a danger to them.  *See Gotti*, 459 F.3d at 345 (upholding use of anonymous jury and finding that prejudice was avoided by "instructing the jury that the special precautions had been implement to protect them from the media"); *see also Thai*, 29 F.3d at 801 ("In order to provide a nonprejudicial reason for maintaining anonymity, the introduction to the [jury] questionnaire stated, with approval of the parties, that '[s]electing an anonymous jury is not an unusual practice and has been followed in many cases in the Federal Court.  Anonymity will ward off curiosity that might infringe on juror's privacy[.]'"); *Paccione*, 949 F.2d at 1193 (upholding anonymous jury and finding that the court "adequately instructed the jury at the outset of the trial that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants"); *Tutino*, 883 F.2d at 1133 (upholding anonymous jury procedure where the jury was instructed that "It is a common practice followed in many cases in Federal court to keep the names and identities of the jurors in confidence.  This is in no way unusual."); *see also Kaziu*, 559 F. App'x at 38 ("[T]he district court told jurors that their identities were being hidden only because of the extensive media coverage and did not implicate Kaziu's dangerousness.").  Thus, in keeping with Second Circuit precedent,

11

the Court can eliminate any potential prejudice to the defendant by issuing an instruction informing the jury in a neutral manner that anonymity is necessary to protect them from the media, and that selection of anonymous juries is not an unusual procedure.

Furthermore, the use of an anonymous jury does not conflict with the defendant's right to conduct meaningful *voir dire*. *See Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981). As the Second Circuit explained in *Barnes*:

> [A]s long as a defendant's substantial rights are protected by a *voir dire* designed to uncover bias as to issues in the case and as to the defendant himself, then reasonable limitations on the questioning should not be disturbed on appeal.

604 F.2d at 140. The trial court has substantial discretion in controlling and limiting the *voir dire* process. *See Rosales-Lopez*, 451 U.S. at 189; *Barnes*, 604 F.2d at 137. Accordingly, a full *voir dire* may be conducted about subjects other than the juror's name, address, and employer's name, and the parties and counsel have an unrestricted opportunity to observe the jurors during this process. *See, e.g.*, *Barnes*, 604 F.2d at 142-43.

In the anonymous-jury context, the Second Circuit has frequently noted that a defendant's rights are protected by the district court's conduct of "a *voir dire* designed to uncover bias as to issues in the cases and as to the defendant[s]." *Vario*, 943 F.2d at 242 (quoting *Barnes*, 604 F.2d at 140); *see also Thai*, 29 F.3d at 801. Accordingly, under the circumstances presented, empaneling an anonymous jury will not prejudice the defendant.

IV.     <u>CONCLUSION</u>

For the reasons set forth above, the government respectfully requests that the Court grant the government's motion for an anonymous jury, and direct that the names, addresses and workplaces of members of both the *venire* and the *petit* jury not be revealed to the parties.

Dated:          Brooklyn, New York
                January 7, 2025


                                        JOSEPH NOCELLA, JR.
                                        United States Attorney
                                        Eastern District of New York

                        By:      ___/s/_____
                                        Sara K. Winik
                                        Gilbert M. Rein
                                        Nina C. Gupta
                                        Assistant U.S. Attorneys
                                        (718) 254-7000

13